**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 06-22966-CIV-KING/GARBER

UNITED STATES OF AMERICA,

        Plaintiff,

v.

NINETY-NINE THOUSAND,
FOUR HUNDRED EIGHTY
DOLLARS AND NO CENTS
($99,480.00) IN U.S. CURRENCY,

        Defendant.

_____/

**ORDER**

THIS CAUSE is before the Court on a *sua sponte* review of the file and upon Claimant Jose Alexander Guzman's counsel, Richard L. Giampa, Esq.'s, attempts to engage in *ex parte* telephonic communications with the undersigned's staff.[1]

Although Local Rule 7.7, entitled "Correspondence to the Court," does not explicitly address attempts to contact Chambers or the Court's staff telephonically, the Rule does not limit its application to written correspondence, and some of Mr. Giampa's telephonic communications with the Court's staff appear to have constituted violations of that Rule because during those communications, Mr. Giampa requested relief and presented arguments. *See* Local Rule 7.7 ("Unless invited or directed by the presiding judge, attorneys and any party represented by an

---

[1] Some of Mr. Giampa's attempts to engage in *ex parte* telephonic communications with the undersigned's staff were "successful" to the extent that Mr. Giampa actually spoke to Court employees regarding some of his concerns. Mr. Giampa's "successes" in that regard, however, only highlight the Court's conclusions, discussed *infra*, regarding the impropriety of attempting to engage in such *ex parte* communications.

attorney shall not: (a) address or present to the Court in the form of a letter *or the like* any application *requesting relief in any form*, citing authorities, *or presenting arguments* . . . .) (emphasis added). Even if Mr. Giampa's communications did not constitute actual violations of that Rule, for several reasons which the Court will discuss *infra*, Mr. Giampa's telephonic communications were at a minimum in contravention of the purposes underlying that Rule and in contravention of principles which are essential to the fair administration of justice.[2]

First, absent extraordinary circumstances which do not exist in this action (and which did not exist when Mr. Giampa attempted to contact the Court's staff *ex parte*), parties should not attempt to have *ex parte* communications with the Court or, by extension, with the Court's staff; this is one of the fundamental principles upon which our judicial system is based. *See, e.g.*, *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) ("As a general rule of thumb, in all but the most exceptional circumstances, *ex parte* communications with the court are an extraordinarily bad idea."); *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995); *In re Colony Square Co.*, 819 F.2d 272, 276 & nn. 12-13 (11th Cir. 1987); *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) ("*Ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'") (quoting *Morgan v. United States*, 304 U.S. 1, 18, 58 S. Ct. 773, 776 (1938)); *id.* ("'A judge should . . . neither initiate nor consider *ex parte* . . . communications concerning a pending or impending proceeding.'") (quoting Code of Judicial Conduct for United States Judges, Canon 3(A)(4)) (omissions in original); *Camero v. United*

---

[2] The Court does not intend this to be an exhaustive list of reasons supporting the Court's conclusion that Mr. Giampa's telephonic communications with Court personnel and unsuccessful attempts to make additional telephonic communications were improper.

2

*States*, 375 F.2d 777, 780-81 (Ct. Claims 1967) ("Of course, one of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an *ex parte* communication concerning the merits of the case with those responsible for the decision. . . . It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers.").

The impropriety of such *ex parte* communications is particularly obvious in circumstances such as those which existed in this case, when the matters at issue are not simply *pro forma* but instead are substantive or procedural matters which Mr. Giampa was attempting to discuss with the Court's staff.

Second, unrecorded *ex parte* telephonic communications carry with them a great risk of mis-communication, and that risk is compounded by the facts that:

(1) only Judges of this Court - not other Court employees such as those with whom Mr. Giampa spoke or attempted to speak - may render decisions in this action

(2) any such communications would have to be passed along to the presiding Judge by the Court employee who spoke with Mr. Giampa (and that employee might not be a lawyer), which creates an increased risk of mis-communication because: (a) Mr. Giampa's communications must be accurately understood by the person to whom he relayed those communications, (b) that person must accurately relay the communications to the presiding Judge, and (c) the presiding Judge must understand the communication which the intermediary has relayed to the Judge; and

(3) no oral or written record exists of such *ex parte* communications.

Similarly, *ex parte* telephonic communications with individuals other than the presiding Judge or Judges[3] increase the likelihood that one or more parties will: (1) misinterpret a comment which a Court employee has made, (2) mistakenly believe that a Court employee's representation is binding on the Court, and/or (3) mistakenly believe that a Court employee's comment reflects the Court's position regarding the relevant matter.

Third - and this point is related to both points above - Court employees are not authorized to suggest to litigants how a Judge might rule regarding any matter; may not give legal advice; and may not engage in argument with litigants or their counsel regarding legal or factual issues. Although no transcript exists of Mr. Giampa's communications with Court personnel (which, as the Court discussed *supra*, highlights one reason why Mr. Giampa should not have initiated those communications), it appears that Mr. Giampa may have been attempting to elicit an opinion as to why the Court made certain rulings and may have been attempting to argue that some of the Court's rulings were unfair to his client. Without question, that type of communication with the Court's staff is improper.

In light of the fact that engaging in telephonic communication fails to preserve a record upon which the parties and Court (and perhaps an appellate court, if one or both parties appeals an issue for which the communication is relevant) may accurately rely in future proceedings in this action, most or all of the potential problems which the Court discussed *supra* may be easily avoided by requiring the parties to make all communications with the Court (apart from oral communications made during a scheduled hearing) *in writing* and in compliance with the Local Rules (*i.e.* not merely

---

[3] As the Court discussed *supra*, absent extraordinary circumstances, *ex parte* contacts with a Judge are also improper.

by writing *letters* addressed to individual Judges, which usually are also in violation of Local Rule 7.7, but instead by engaging in, for example, motion practice which the Local Rules and Federal Rules of Civil and Appellate Procedure contemplate).

Assuming Mr. Giampa's conduct did not technically violate Local Rule 7.7, the undersigned is now alerting Mr. Giampa and opposing counsel to the fact that, absent prior permission from the Court, the parties shall not contact the undersigned's Chambers by letter, telephonically, or by other similar methods, unless their purpose is to inform the Court that they have settled one or more pending matters. The parties generally, if not always, shall communicate with the Court by filing written motions, responses, replies, notices, appeals, and other documents whose form and substance are dictated by the Local Rules, the Federal Rules of Civil and Appellate Procedure, and this Court's Orders.

Turning to what *appear to be* some of Mr. Giampa's specific arguments,[4] it appears that Mr. Giampa's concerns are based at least in part on incorrect interpretations of the written record and/or an incomplete understanding of his client's rights to challenge Court rulings with which Mr. Giampa does not agree.

As a preliminary matter, Mr. Giampa apparently believed that the undersigned had not ruled on some of his Motions in a timely manner. At the time of Mr. Giampa's telephonic communications with this Court, however, it does not appear that any Motions which Mr. Giampa

---

[4] Consistent with the risks involved with improper communications which the Court discussed *supra*, the Court cannot identify Mr. Giampa's arguments with certainty because Mr. Giampa attempted to communicate those arguments telephonically to Court employees instead of attempting to communicate them in writing and in compliance with applicable Rules and Orders to the undersigned or to Judge King.

filed on his client's behalf were pending before the undersigned. Instead, it appears that those Motions were pending before Judge King.

Additionally, on March 20, 2007, Mr. Giampa, apparently consistent with representations he tried to make telephonically to the undersigned's staff, filed a somewhat perplexing motion on behalf of his client: Claimant's Motion to Appeal a Magistrate's Decision Denying the Claimant's Request for an Adjournment for Sixty (60) Days. *See* D.E. #31. In that Motion, Mr. Giampa wrote that on February 21, 2007, he had filed on behalf of his client a Motion in which he had requested "adjournment of trial which was unopposed by plaintiff's counsel . . . ," and that on February 23, 2007, the undersigned had denied that Motion "without any explanation as to whey an adjournment would not be justified." D.E. #31, at 1 ¶ 1.

As Judge King noted in his March 27, 2007, Order, however, Judge King - *i.e.*, *not the undersigned* - denied Mr. Giampa's client's Motion in which he had requested a sixty-day adjournment of trial, and therefore Mr. Giampa was wrong as a factual matter as to which Judge had denied his request for an adjournment.[5] *See* Claimant's Motion to Adjourn Trial, etc. (D.E. #19); Judge King's February 28, 2007, Order Denying Claimant's Motion to Adjourn Trial (D.E. #20); Judge King's March 27, 2007, Order Denying Motion to Appeal as Moot (D.E. #39), at 2 ("Since this Court, and not a Magistrate Judge, denied the Claimant's previous motion, the Court has already considered and denied this Motion. Claimant's current Motion gives the Court no new reason to reconsider this issue.").

---

[5] In fact, unless Judge King explicitly directed the undersigned to do so, the undersigned would not rule on any motion which could affect Judge King's trial date and pre-trial deadlines - *e.g.*, discovery deadlines and deadlines for filing motions - which are based on that trial date.

Additionally, Mr. Giampa, in Claimant's Motion to Appeal a Magistrate's Decision Denying the Claimant's Request for an Adjournment for Sixty (60) Days, wrote that the undersigned denied the relevant underlying Motion on February 23, 2007. *See* D.E. #31, at 1, 3. It does not appear that the Court entered any Order regarding that Motion until February 28, 2007 - not February 23, 2007 - when Judge King denied that Motion. *See* D.E. #20. It is unclear whether Mr. Giampa simply made a typographical error when he alluded to the February 23 date or whether, instead, he believes he received some type of other communication on February 23 regarding the denial of that Motion. Once again, Mr. Giampa's *ex parte* oral communications are not helpful in determining whether Mr. Giampa's reliance on the February 23, 2007, date (or Mr. Giampa's argument that the undersigned, not Judge King, denied the relevant Motion) had some basis in fact (*e.g.*, if Mr. Giampa believes he received some type of order to that effect on February 23, 2007) or whether, instead, Mr. Giampa merely misinterpreted the record about which he was complaining.

Mr. Giampa's March 20, 2007, Motion to Appeal a Magistrate's Decision Denying the Claimant's Request for an Adjournment for Sixty (60) Days is also unclear in the manner in which he presented his arguments to the Court. If the undersigned had entered an order denying Mr. Giampa's client's request for a sixty-day adjournment, then the proper procedure for Mr. Giampa to follow in order to appeal that decision to Judge King would have been to simply file an appeal of the undersigned's order to Judge King pursuant to 28 U.S.C. § 636, as opposed to taking the approach Mr. Giampa took by filing a motion *seeking permission* to appeal the order to Judge King.

Finally, Mr. Giampa's improper telephonic *ex parte* communications: (1) suggest that when he made those communications, he believed that the undersigned had failed to timely consider his client's motions (although, as the Court discussed *supra*, it does not appear that any of Mr. Giampa's

7

client's motions which were pending at that time were referred to the undersigned), and (2) suggest that Mr. Giampa believes that the Court improperly ruled on some of the Government's motions without giving Mr. Giampa the opportunity to respond.[6] Once again, the Court will not give Mr. Giampa legal advice as to how he should proceed with his objections and/or appeals regarding those matters, assuming those are in fact his objections.[7] The Court will, however, point out a few facts which may in the future save both Mr. Giampa and the Court time. First, the Federal Rules of Civil and Appellate Procedure, as well as this Court's Local Rules and any relevant orders which the Court has entered, dictate the appropriate means for seeking redress regarding orders and/or report and recommendations with which Mr. Giampa does not agree. Second, in certain circumstances, one or more of three options for redress may be available to federal litigants who disagree with a Magistrate Judge's or a District Judge's ruling[8]: (1) the litigant may file a *written motion* in which he or she moves for reconsideration of a ruling by the Magistrate Judge or District Judge; as the term "reconsideration" implies, such a motion should be addressed to the Judge who entered the relevant

---

[6] Of course, a court is not required to wait for a response *in every situation* before it rules on a pending motion. With certain exceptions, such as in the case of most motions for summary judgment, in order to obtain redress in such a situation, a party generally must demonstrate not only that it was not given the opportunity to respond to a motion, but that it suffered prejudice because it was not given the opportunity to respond.

[7] At the risk of sounding redundant, the Court cannot ascertain with certainty that those are Mr. Giampa's complaints because he chose to attempt to telephonically communicate his complaints to several members of the Court's staff instead of explaining his positions in written motions and/or appeals filed directly with the Court.

[8] Of course, the Court will not attempt to determine whether any of these potential options is available to Mr. Giampa's client at this time regarding any specific issue or whether any of these potential options will become available to Mr. Giampa's client in the future, and by listing these three potential options the Court does not intend to foreclose, or even comment on the merits of, any other potential avenues for relief which Mr. Giampa or his client wishes to pursue.

order or report and recommendation, because only that Judge technically may "reconsider" his or her decision; (2) the litigant may file with the District Judge a *written* appeal of a Magistrate Judge's ruling; and/or (3) in certain circumstances the litigant may file with the Eleventh Circuit a *written* appeal of a District Judge's judgment or order (and in some circumstances a written appeal of a Magistrate Judge's judgment or order).

Although this Court certainly cannot determine what would be the appropriate next step for Mr. Giampa to take on behalf of his client in order to attempt to obtain the relief he seeks, the Court can say with certainty that improper *ex parte* telephonic communications with the undersigned and the undersigned's staff are impermissible and will not assist Mr. Giampa in obtaining such relief.

Accordingly, and in view of the foregoing

ORDERED that counsel for the claimant, Mr. Giampa, cease and desist from any further *ex parte* communications to this Court or any member of its staff.

RESPECTFULLY SUBMITTED this 3rd day of April, 2007.

*/s/ Barry L. Garber*
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

Copies supplied to:
United States District Judge James Lawrence King
Counsel of record